# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNAN R. McNEESE, | 1:10-cv-00504-LJO-SMS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| HARTLEY, Warden | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction of kidnapping for ransom and robbery. Petitioner is currently serving an indeterminate life sentence with the possibility of parole, plus ten years.

In the instant petition, Petitioner does not contest the validity of his conviction; rather, he contends the Board of Parole Hearings' (Board) 2008 decision finding him unsuitable for release.

Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior

---

[1] This information is derived from the state court documents attached to Respondent's Answer, which are not subject to dispute.

1

Court challenging the Board's 2008 decision denying him parole. Petitioner claimed the Board's decision violated his due process rights because there was not some evidence to support the finding that he remains an unreasonable risk to public safety. The superior court denied the petition finding some evidence to support the Board's decision.

Petitioner then filed petitions for writs of habeas corpus in the California Court of Appeal and California Supreme Court. Both petitions were summarily denied.

Petitioner filed the instant federal petition for writ of habeas corpus on March 22, 2010. Respondent filed an answer to the petition on July 29, 2010, and Petitioner filed a traverse on August 19, 2010.

## STATEMENT OF FACTS[2]

On December 1, 1986, while working for a drug dealer, petitioner and his crime partners forcibly entered the victim's home to collect a $40,000 drug debt. They kidnapped the victim in order to demand $50,000 in ransom for his return. They searched the home, but found only $800 worth of jewelry. They handcuffed him and put him in the trunk of their vehicle. However, the victim was able to escape as they entered a freeway ramp. While Petitioner was on bail for this crime, he and three crime partners went to the hotel room of another drug dealer to rob him. One of the men claimed to be the manager of the hotel in order to gain entry to the room. Once inside, they threatened the victim with guns and beat him with fists and a tire iron. He was later found by the police in the back of a van. When police opened the van, they found the victim in his underwear. His chest was drenched in blood and there was a large gash over his eye. He sustained several broken ribs, a fractured jaw and numerous lacerations to the face. After several attempts to flee from officers, Petitioner was eventually arrested.

## DISCUSSION

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen,

---

[2] This information is derived from the Los Angeles Superior Court December 19, 2008 decision, attached as Exhibit 2 to Respondent's Answer.

482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or

attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In

4

addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609. Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the

significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

### A.    Last Reasoned State Court Decision

In the last reasoned decision of the Los Angeles Superior Court, the claim was denied based, in pertinent part, on the following:

> Petitioner went before the Board for a parole consideration hearing on April 23, 2008. Petitioner was denied parole for one year. The Board concluded that although petitioner has made many recent gains in prison, [he] was still unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including the commitment offense.
>
> The nature of the commitment offense may indicate that a prisoner poses an unreasonable risk to danger of society when the offense is especially heinous, atrocious or cruel. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1); [*In re*] *Rosenkrantz* [(2002) 29 Cal.4th 616,] 682-683. The heinousness of the crime is relevant if it is indicative of the "ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." (*In re Shaputis* (2008) 44 Cal.4th 1241, 1255.) The Board found petitioner's commitment offense to indicate an unreasonable degree of danger because multiple victims were attacked in separate incidents. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A). It does not appear that the kidnapping victim was significantly physically injured during the attack because he was able to escape. However, he was handcuffed and locked in the trunk of a moving vehicle. He was also robbed of $800 wroth of jewelry. The second victim was not as fortunate as he did receive several severe injuries in the hands of petitioner and his crime partners, including a fractured jaw and broken ribs. In the case of the second victim, there is some evidence that the crime was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering. (Cal. Code. Regs., tit. 15, § 2402, subd. (c)(1)(D).) This callousness was demonstrated by the brutal beating in which four men attacked a lone victim with fists and a tire iron. Such a beating is an example of exceptional callousness because it involves severe trauma. (*In re Scott* (2004) 119 Cal.App.4th 871, 891.) Where an offense includes "multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim," it is some evidence that the perpetrator is exceptionally callous, and therefore, unreasonably dangerous. (*Id*. at 892.)
>
> When determining whether an inmate currently poses an unreasonable risk of danger to society, in addition to the commitment offense, the Board must also consider "the passage of time or the attendant changes in the inmate's psychological or mental attitude." (*Shaputis*, *supra*, 44 Cal.4th at 1255.) In this case, petitioner's serious misconduct in prison is another indicator that petitioner

remains unreasonably dangerous. (Cal. Code. Regs., tit. 15, § 2402, subd. (c)(6).) In total, petitioner has received thirteen CDC 115s for serious misconduct. His last was in March, 1999 for physical altercation with the use of force. Because his most recent act of violence was less than ten years ago, it constitutes some evidence that petitioner is not yet suitable for parole. Additionally, there is some evidence that petitioner continues to pose an unreasonable risk of danger to society based on his psychological evaluation in which he was ranked in the moderate range of psychopathology and low to moderate range for future violence. The Board was impressed that petitioner has participated in valuable self-help programming which has allowed him to gain insight into the nature and magnitude of his commitment offense. However, there is some evidence that petitioner must demonstrate that he is able to maintain his gains over a longer period before he is released. [¶] . . .

(Exhibit 2, to Answer, at 2-3.)

      B.     2008 Board Hearing

As indicated by the superior court, the Board denied parole at the 2008 hearing based on the heinous nature of the commitment offense, institutional misconduct, and psychological evaluation placing in the low to moderate range.

Based on the heinous nature of the second commitment offense, there is some evidence to support the finding it was carried out in an especially cruel and callous manner. The first offense took place while Petitioner was using and dealing drugs. In an effort to stimulate his drug dealings, Petitioner and his crime partner, Michael Anderson, robbed another drug dealer (victim James Ransom) at his residence and demanded $50,000 for ransom. When Mr. Ransom was not able to produce the $50,000, he was handcuffed and thrown in the trunk of Petitioner's vehicle. Petitioner and his partner searched the residence and took approximately $800.

Although the first kidnapping and robbery victim did not sustain significant physical injury, he was nonetheless handcuffed and thrown in the trunk of a van and abandoned. The second victim was not as fortunate. While Petitioner was out on bail for a prior offense, he along with three other males attacked Mr. Elam at gunpoint in his motel room stating they were going to rob and kidnap him. A struggle ensued which resulted in Mr. Elam being beaten with fists and an tire iron. Mr. Elam was then thrown in the back of the moving van and abandoned in a parking area. When discovered by police, he was wearing only his underwear and his cheat area was drenched with blood. He had a gash over his right eye and his face was swollen. As a result

of the beating, Mr. Elam suffered a fractured jaw, a broken finger, several broken ribs, and numerous lacerations to his face. Thus, multiple victims were involved in separate incidents, and one of the victims sustained substantial physical injury. In light of these factual circumstances, the second offense was carried out in an especially cruel and callous manner. Cal. Code Regs. tit. 15, § 2402(c)(1)(A), (D).

The superior court then considered the fact that Petitioner suffered thirteen serious rules violations (CDC-115s), the last in 1999 for physical altercation with another inmate. Under California law, institutional behavior that evidences "serious misconduct" is probative of an inmate's present dangerousness. Cal. Code Regs. tit. 15, § 2402(c)(6) (one circumstance tending to show unsuitability for release is if "[t]he prisoner has engaged in serious misconduct in prison or jail.") The Board was legitimately concerned that Petitioner has not sustained a sufficient period of incarceration free of violence, and he therefore continues to remain an unreasonable risk to public safety if released.

In addition, Petitioner's institutional behavior also included a review of the most recent psychological report which placed Petitioner in the moderate for psychopathy. Petitioner posed a "low to moderate" to likelihood of committing future violence. Such finding was properly considered by the Board and superior court in finding some evidence to support Petitioner's current dangerousness. See e.g. Hayward, 603 F.3d at 563 (psychologist's evaluation that prisoner posed a "low to moderate" risk of future violence, coupled with evidence that offense was particularly aggravated, is sufficient evidence to demonstrate future dangerousness to support denial of parole).

After considering the factors in support of release on parole, the Board concluded the positive aspects of Petitioner's behavior did not outweigh the factors in support of unsuitability. The heinous circumstances of the commitment offense, coupled with his institutional misconduct which included a physical altercation and unfavorable psychological evaluation, remain indicative of Petitioner's present danger to public safety, and the state courts' determination of this issue was not contrary to, or an unreasonable application of the some evidence standard, nor was it an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

Thus, the petition for writ of habeas corpus must be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 14, 2010**               /s/ Sandra M. Snyder
                                              UNITED STATES MAGISTRATE JUDGE